## James McNamara
### v.
### W. H. Godair et al.

*Filed at Ottawa May 12, 1896.*

1. Evidence—*excluding evidence erroneously admitted by instruction.* An instruction excluding evidence may be sufficient to cure its erroneous admission where there is nothing to bring the case within any exception to the general rule.

2. Pleading—*in replevin—setting up interest acquired by levy upon agister's lien.* A plea in replevin attempting to set up an interest in the property by levy on an agister's lien thereon is demurrable, where it shows on its face that the levy was made upon the entire property, and that the property itself was advertised for sale.

3. Levy—*what is not an interest subject to levy.* A person employed to feed and take care of sheep, under an agreement to pay him a certain part of the proceeds of their sale after marketing, has no partnership or joint interest in the property, and no agister's lien thereon which can be reached by his creditors on execution.

*McNamara v. Godair,* 59 Ill. App. 184, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. James Shaw, Judge, presiding.

M. B. Loomis, and J. H. Stearns, for appellant: .

By our statute no action of replevin will lie at the suit of any person unless he shall, at the time, have a right to reduce into his possession the goods taken. Rev. Stat. chap. 119, sec. 2; *Dunning* v. *South,* 62 Ill. 175; *Moriarty* v. *Stofferan,* 89 id. 528; *Anderson* v. *Talcott,* 1 Gilm. 365.

If this transaction was, in fact, a loan of money or credit, with a secret lien upon personal property as security, no matter what form was given to it, unquestionably the property was subject to the executions in defendant's hands. *Thompson* v. *Yeck,* 21 Ill. 73; *Bastress* v. *Chickering,* 130 id. 206; *VanDuzor* v. *Allen,* 90 id. 499.

If a man contributes work, labor, services and skill towards the attainment of a common object, upon the understanding that his remuneration is to depend upon the realization. of profits, so that if the business is a losing one he is to get nothing, he is a partner, and not a servant for hire. 2 Addison on Contracts, (Edson & Co.'s ed.) 793; *Pierce* v. *Shippee*, 90 Ill. 371; *Robbins* v. *Laswell*, 27 id. 365.

Atkinson had, certainly, whether under the contract or by virtue of his possession, after the contract was abrogated for the default of Godair, a lien on the sheep. *Flagg* v. *Stowe*, 85 Ill. 164; Story on Agency, secs. 352, 369.

This lien of Atkinson's was leviable property, and subject to be sold for the payment of Atkinson's debts. Story on Bailments, sec. 352, note 3; *Saul* v. *Kruger*, 9 How. Pr. 569; *Stief* v. *Hart*, 1 Comst. 20.

The term "chattels" includes all kinds of property except freeholds, or things which are parcels of a freehold. 1 Bouvier's Inst. No. 462; Chitty's Pr. 90.

This question has been before our Supreme Court in the case of a warehouseman's lien, and while they refused to pass upon it they reversed a contrary decision. *Hanchett* v. *Bank*, 25 Ill. App. 274; *Bank* v. *Hanchett*, 126 Ill. 499.

When goods are in the hands of one having a lien, the general owner cannot maintain replevin. *Low* v. *Martin*, 18 Ill. 286; *Express Co.* v. *Haines*, 67 id. 137.

J. A. CRAIN, for appellees:

A judgment creditor of a partner cannot take in execution any specific article of the partnership property, but must levy on the interest of the partner in the entire assets. *Plumerfield* v. *Seward*, 14 Sou. Rep. (Miss.) 442.

A partner may maintain replevin against an officer where partnership property is seized under an execution against his co-partner. *Hutchinson* v. *Dubois*, 45 Mich. 143.

The common law gave no lien for agistment. 3 Kent's Com. 365; *Chapman* v. *Allen,* Cro. Car. 271; *Bevan* v. *Waters,* 3 C. & P. 520; *Jackson* v. *Cummings,* 5 M. & W. 342; *Judson* v. *Etherge,* 1 C. & M. 743; *Wallace* v. *Wodgate,* 1 C. & P. 575; *Yorke* v. *Greenaugh,* 2 Ld. Raym. 866 ; *Richards* v. *Symons,* 15 L. J. (N. S.) 35.

A personal lien existing in favor of any person, and not liable to voluntary transfer, can never be subject to a writ of execution. Freeman on Executions, sec. 110; *Holly* v. *Hungerford,* 8 Pick. 50; *Leg* v. *Evans,* 6 M. & W. 36.

The lien cannot be set up by the attaching officer or other person in defense of an action by the owner. It is a personal privilege, which the person who is entitled to it may avail himself of or not, as he pleases. *Lovitt* v. *Brown,* 40 N. H. 511; *Kittridge* v. *Sumner,* 11 Pick. 50; *Holly* v. *Hungerford,* 8 Pick. 73; *Ruggles* v. *Walker,* 34 Vt. 468.

The lien which a bailee has for the price of labor done, on the materials of another, cannot be set up by a wrong-doer to defeat the action of the general owner. *Bradley* v. *Stafford,* 23 N. H. 444.

Though by the laws of the State in which the officer is acting he may take exclusive possession of property under a writ against one of its owners, he must confine his levy and sale to the interest of the defendant. If he assume to levy upon or sell the whole property he may be sued for trespass or conversion, as the injured co-tenants may elect. *Neary* v. *Cahill,* 20 Ill. 214; *Atkins* v. *Saxton,* 77 N. Y. 195; *Frisbee* v. *Langworthy,* 11 Wis. 378.

Mr. Justice Wilkin delivered the opinion of the court:

In September, 1892, appellees, live stock and commission merchants, doing business in the city of Chicago under the firm name of Godair, Harding & Co., purchased 10,000 sheep in Colorado and shipped them to South Freeport, Illinois, where they were placed in the custody of John O. Atkinson, to be fed for market, under the following contract:

"Whereas, there are now in barn No. 1 and in pens on the north side of barn No. 2, at South Freeport, Ill., 10,000 sheep, bought of Seldomridge & Pebbles, at Kit Carson, Col., for Godair, Harding & Co., Chicago, Ill., paid for by them and shipped to them at Chicago, Ill., and stopped in transit to feed, at South Freeport. Now, it is hereby agreed between said Godair, Harding & Co. and John O. Atkinson, of Freeport, Ill., that said Godair, Harding & Co. employ said Atkinson to care for and feed said sheep for them until ready for market, and to furnish feed for same themselves, and to pay said Atkinson for his services all said sheep shall bring in market over first cost, cost of shipment, feed, and their commission for selling same, including interest on money paid by them and invested in said venture; and said Atkinson agrees to care for and feed said sheep, and when ready for market to re-ship the same to said Godair, Harding & Co. at Chicago, Ill., and to accept for his services the consideration so as above agreed to be paid to him.

"Witness the hands of said parties hereto this first day of November, 1892.

Godair, Harding & Co.,
John O. Atkinson.

"Witness—H. C. Hyde."

Between the date of this contract and the 11th day of February following, complainants had furnished Atkinson $13,500 with which to purchase feed, and on that date he again called on them for $2500 more. To that time but 406 of the sheep had been marketed. William H. Godair, of the plaintiffs' firm, immediately went to Freeport, and thereafter made daily shipments to February 22, 1893, aggregating 4500 head. In the meantime a controversy had arisen between the parties over Atkinson's demand for additional feed money, and about the last named date other members of the firm came on from Chicago, and while there, with Godair, looking after the remainder of the flock, intending to ship them, they were ejected from the barns by an agent of Atkinson, at his instance. Atkinson then confessed a judgment in favor of one Allen for $5216, and another in favor of Hiram Waltz for $20,000, and executions immediately issued upon these judgments and were levied by the sheriff upon the remaining 5100 sheep *as the property of Atkinson*, and

were advertised for sale on the 10th of March, but before that date appellees brought this action of replevin.

The declaration was of two counts, one for the unlawful taking and the other for the unlawful detention of the property. Eleven pleas were interposed, consisting of, first, *non cepit;* second, *non detinet;* third, property in defendant; fourth, property in Hiram Waltz; fifth, property in John O. Atkinson; sixth, that defendant was sheriff, and as such took the goods under an execution against Atkinson, at the suit of Hiram Waltz, as the property of Atkinson; seventh, that the defendant was sheriff, and as such took the property under an execution against Atkinson at the suit of Hiram Waltz, Atkinson being in possession and entitled to the possession, and that Atkinson's interest therein was subject to execution; eighth and ninth are like the seventh, except that they refer to other execution creditors of Atkinson; tenth, that plaintiffs delivered the sheep to defendant to be agisted, and that he had and has an agister's lien thereon. The eleventh attempts to set up an agister's lien upon the sheep in John O. Atkinson, and the levy by the sheriff upon that lien under said executions. To it a demurrer was sustained. Upon the other pleas issues were formed, which, upon trial by jury, were found for the plaintiffs. Judgment was rendered in accordance with the verdict, and an appeal was taken to the Appellate Court for the Second District, where it was affirmed. To reverse that judgment a further appeal is prosecuted to this court.

The alleged errors upon which a reversal of the judgment below is urged, proper to be reviewed in this court, are, that improper evidence was admitted by the trial court on behalf of complainants; that erroneous instructions were given at the instance of plaintiffs, and proper instructions, requested by the defendant, refused; and that the demurrer to the eleventh plea should have been overruled.

The point that incompetent evidence was admitted is without merit. Counsel admit that the objectionable testimony, though allowed to go to the jury over their objection, was afterwards excluded by an instruction given, but they insist the error could not be corrected in that way. That position would certainly not be asserted as a general rule, and there is nothing here to bring the case within any exception. Even if the testimony had not been withdrawn, its admission, under all the facts of the case, would not have been reversible error.

As to the alleged error in giving and refusing instructions, it is to be remarked that the defendant's theory throughout the trial was, not that the defendant in his executions (J. O. Atkinson) was the absolute owner of the property, but that he had an interest therein, with the plaintiffs, which was liable to execution; while the plaintiffs claimed to be the owners of the entire property, and, as such, entitled to the exclusive possession thereof. The law applicable to the case, under these respective contentions, might have been stated in a very few plain instructions. The court, however, gave ten on behalf of plaintiffs and eighteen on behalf of defendant. Some of these are subject to criticism, but we are unable to find any such error in the rules of law announced therein as to justify a reversal of the judgment below. Defendant's theory of the case was certainly as favorably presented to the jury, if not more so, than he had a right to ask under the evidence.

We think the court ruled properly upon the demurrer to the eleventh plea. In the first place, we see no reason for holding that an agister's lien, as given by our statute, is subject to execution and sale as distinguished from a common law agister's lien, and it is well settled that the latter is not the subject of levy and sale. (Freeman on Executions, secs. 110, 111.) But even if it were otherwise, this plea does not state the facts necessary, under the statute, to establish such a lien. Certainly the sub-

stance of the contract under which the animals were placed in the keeping of the agister must be alleged in order to show a lien, and for what amount in order to show that a lien exists under our statute.  But the plea in this case, while attempting to allege a mere lien in Atkinson subject to levy, shows on its face that the defendant did not levy the execution upon that lien or the mere interest of John O. Atkinson, but he levied upon the entire property as belonging to him, and had advertised for sale, not Atkinson's interest therein, but the property itself.  The demurrer to the plea was properly sustained.  If it were otherwise, no injury is pointed out or claimed to have resulted to the defendant by that ruling.  He was allowed to introduce all the evidence which he offered tending to show any interest in Atkinson to the property under the pleas upon which issue was joined.

Considering, now, the several grounds of reversal together, we think it clear from this record that no other conclusion could have been properly reached than that announced by the verdict of the jury and the judgment of the trial court, upon the facts appearing in this record.  The result of the verdict of the jury and the judgment of affirmance by the Appellate Court is to establish the fact that the contract between plaintiffs below and J. O. Atkinson was the one in writing hereinbefore set forth, and if we were permitted to review the evidence upon that subject, a different conclusion could not be reached.  That being so, the rights of the parties depend upon the construction of that contract, and that is a matter of law, to be determined by the court.  By its terms Atkinson had no property interest in the sheep.  He was simply employed by the plaintiffs to feed and take care of them, to be paid, after they were marketed, a certain part of the proceeds of their sale.  It is, we think, idle to say that he had a partnership or joint interest in the property under this contract, and it is equally unsound to say that he had an agister's lien, either at common law

or under the statute. By the very terms of the contract he was not entitled to pay for keeping them until he had parted with possession of them and they had been converted into money by being sold in the market. In any view of the case the judgments of the circuit and Appellate courts are right.                    *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.